Argued November 26, 1920, affirmed January 4, 1921.

## LEXINGTON INV. CO. *v.* WATSON.

(194 Pac. 172.)

**Specific Performance—Evidence Held not to Show Performance of Condition of Contract to Convey.**

1. Where one defendant in suit for partition asked specific performance, claiming interests in the property by virtue of a contract with some of his co-owners, whereby they were to convey their interests to him on condition that he support their mother during her lifetime, evidence *held* insufficient to show performance of that condition.

**Specific Performance—May be Granted in Favor of Party Who Did not Sign Contract.**

2. Specific performance may be granted in favor of a party who did not sign the contract as against other parties who did sign it.

**Specific Performance—Contract not Signed by All Owners not Enforced.**

3. Where the written contract showed on its face that it was the intention of the parties that it should not become effective until it was signed by all ten heirs of the former owner of the land, it will not be specifically enforced as against the six heirs who did sign it, especially after the lapse of 20 years during which the parties treated it as not in force.

From Douglas: GEORGE F. SKIPWORTH, Judge.

Department 2.

The Lexington Investment Company is an Oregon corporation, with its principal office at Roseburg. The Roseburg National Bank is a United States banking corporation, with its office at Roseburg. On April 17, 1874, James Watson died intestate in Douglas County, leaving a widow, Emily A., and ten children; Sarah J., J. F., D. L., E. B., Robert J., Charles F., Mary Kate, Emily E., Florence I., and John L. Watson. The daughter Sarah J. Hamilton died, leaving eight children, J. W., W. S., J. F., C. L., and Luther Hamilton, Inez E. Micelli, Julia Washburn, and Stella M. Richardson. The son D. L. Watson died, leaving six children: Robert R., Neil O., Laura L., and James Watson, Dorothy Watson-Tuttle, and Jotty Watson-Folsom. The daughter Mary Kate Watson married John A. Floyd, and the daughter Emily E. Watson married S. H. Hazard, and died September 24, 1883, leaving a son Roy, who died at the age of eight months, with his father as his only heir. On October 22, 1885, Florence I. Watson married A. M. Crawford.

At the time of his death James Watson was the owner of about 900 acres of land, the title to which descended to his widow and his sons and daughters above named. Through a deed from the daughter Mary Kate and John A. Floyd, her husband, the Lexington Investment Company is the owner of an undivided one-tenth interest in the land. It is alleged that on October 6, 1893, J. F. Watson and Virginia, his wife, E. B. Watson and Eleanor, his wife, conveyed an undivided one-fifth interest therein to the daughter Florence I. Crawford; that on June 8, 1917, she acquired an undivided one-tenth interest therein through a deed from L. H. and Mabel E. Hazard, his

wife, and Fannie Hazard, a widow, sole heirs of S. H. Hazard, and that Florence I. Crawford is now the owner of an undivided four-tenths interest. On October 15, 1887, Charles F. and Lucy A. Watson, his wife, conveyed their interest to John L. Watson. On February 14, 1893, he also acquired the interest of Robert J. Watson, and now claims to own an undivided three-tenths interest. Emily A. Watson, the widow of James, died about April 19, 1896. The land all lies in a contiguous tract. The investment company paid all the taxes on the property for the years 1912 to 1917, inclusive, amounting to $1,004.90, and, in addition thereto, claims to have a tax certificate of sale in the sum of $553.50 for the interest of John L. Watson, dated February 9, 1918. It also appears that there are five different judgment liens against him, the holders of which are made defendants.

As a cause of suit, the Lexington Investment Company, Florence W. and A. M. Crawford, W. S. and Queenie B. Hamilton, as plaintiffs, allege that the company is the owner of an undivided one-tenth interest in the property and has paid the taxes on all of it, and that it has a tax certificate of sale upon the interest of John L. Watson, as above stated; that Florence W. Crawford is the owner of an undivided four-tenths interest; that the eight Hamilton heirs are collectively the owner of an undivided one-tenth interest; that John L. Watson is the owner of an undivided three-tenths interest; that the six D. L. Watson heirs, including his widow, Laura L. Watson, are the owners of an undivided one-tenth interest. The complaint is in the usual form, and, among other things, alleges:

"That on account of the large number of owners of said property, and on account of the location thereof, and the fact that the same is farming and

grazing land, an actual partition cannot be had without great prejudice to the owners, and in order to protect the rights and interests of the parties hereto, it is necessary that a sale of said property be had and the proceeds thereof distributed according to the rights of the parties hereto.''

Plaintiffs pray for a decree that the property be sold and the proceeds thereof be applied, first, to the payment of the costs of the suit, second, to the claim of the Lexington Investment Company on account of taxes, and that the residue be divided among the owners of the property according to their respective interests as alleged in the complaint, except that the proceeds from the share of defendant John L. Watson shall first be applied to the tax certificate of the Lexington Investment Company, and next to the several judgment liens against him.

The defendants Laura L., Robert R., Kate, Neil O., Helen E., Laura L., Jr., and James Watson, Dorothy Watson-Tuttle, Clarence L. Tuttle, Jotty Watson-Folsom, and Harry E. Folsom filed an answer in which they ''admit all the facts set out in plaintiffs' complaint,'' and ''consent that a decree be rendered as prayed for.''

The defendant John L. Watson filed an answer, in which he admits that his interest is subject to the taxes and liens described in the complaint, and that the heirs are as alleged, and denies all other material allegations, and as a further and separate defense alleges that Lexington Investment Company is the owner of an undivided one-tenth interest, that the Hamilton heirs are the owners of an undivided one-tenth interest, and that he is the sole owner of an undivided eight-tenths interest in the property subject only to the dower right of the defendant Laura L. Watson, widow of D. L. Watson, deceased, in and

to a one-tenth interest. He then pleads the making of an agreement by the other heirs as parties of the first part, with him as the party of the second part, on September 24, 1883, in and by which they did "bargain, sell and agree to convey" to him all of such lands, subject only to the dower right of his mother, Emily A. Watson, which, among other things, recites:

"It is the wish of all of the parties to this agreement that all of said lands shall be charged with the support of the said Emily A. Watson during her life and of the said Florence I. Watson if she shall survive the said Emily A. Watson, so long as she shall remain unmarried. It is agreed that the price to be paid by the said John L. Watson for said lands shall be two dollars per acre.

"It is therefore the condition of this agreement that all and each of said parties of the first part shall within a reasonable time after the death of the said Emily A. Watson and the death or marriage of the said Florence I. Watson and the payment to them of the sum of two dollars per acre for each acre of said land by the said John L. Watson, make, execute, and deliver to the said John L. Watson a good and sufficient deed or deeds conveying to him in fee simple all their interest in said lands.

"It is a further condition of said agreement that the said John L. Watson shall well and truly pay to the said Emily A. Watson during her life and after her death to the said Florence I. Watson until her death or marriage, interest on the said sum of two dollars per acre at the rate of eight per cent per annum.

"It is understood that each of the parties of the first part contracts only for the conveyance of his or her interest in the premises, and that the deeds to be made pursuant to this agreement are to be without any covenants of warranty."

It is then alleged that he accepted the contract, took possession of the premises under it, and entered

upon its faithful performance, and that ever since he has been, and is now, in possession, claiming to own an undivided eight-tenths interest in the property; that during all of such times it has been assessed to him and he has had the sole physical possession of the property and has made valuable improvements thereon; that no objections have been made, and that no one ever disputed his claim until about the time this suit was commenced; that he paid Emily A. Watson interest on the $2 per acre during her lifetime; that since her death in April, 1896, he has been ready and willing to pay the $2 per acre, with accrued interest; that upon delivery of the deed he is now ready and willing to make such payment; that the deed was never delivered and that its execution has been refused by the plaintiffs; that, after the execution of the contract, Florence W. Crawford attempted to acquire the interest of three other heirs, but that such conveyances are subject and inferior to the contract and do not convey any title; that he is the owner in fee simple of other adjoining land, and that there are several judgment liens against him which he is not in financial condition to satisfy and discharge; that a sale of the property would be very prejudicial to his interests, and that the land can be actually divided without injury to the plaintiffs. He prays for a decree that the court shall determine the amount of money due under his contract, and that upon the payment thereof the parties be ordered to execute and deliver to him a good and sufficient deed of their respective interests in the land, and for an actual partition of the property in lieu of a sale.

After denying all the material allegations of the further and separate answer, and for a further and separate reply, the plaintiffs allege the signing of

.the contract of September 24, 1883, by some of the heirs only, and the failure and refusal of others to execute the instrument; that by reason thereof it was null and void; that it never did become a valid or binding contract and was never so treated or considered by anyone; that it was never delivered, and that the defendant never took possession under it or complied with any of its terms or provisions; that for more than 20 years after the death of Emily A. Watson the defendant never made any claim to the lands under the contract; and that his alleged agreement is stale.

The judgment lienholders and all the heirs and parties in interest were defendants, and John L. Watson was the only one who made a defense.

After the testimony was taken the Circuit Court made findings, upon which a decree was rendered in favor of the plaintiffs as prayed for in their complaint, from which the defendant appeals.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. John T. Long* and *Mr. George Neuner, Jr.*

For respondents there was a brief over the name of *Messrs. Rice & Orcutt,* with an oral argument by *Mr. A. N. Orcutt.*

JOHNS, J.—James Watson was a pioneer of Douglas County, and his sons and daughters became prominent in the history of the state. At the time of his death he was the owner of about 900 acres of land in Douglas County, the south line of which for a distance of about three miles was on the east fork of the North Umpqua River. About 90 acres, known

as farm land, were on the river bottom. The remainder was hillside land covered with some brush and a little timber, more or less rocky, without water, and about its only value was for grazing purposes. After the death of the father, his widow, the defendant son, and the daughter Florence, who was then about 8 years of age, continued to reside upon the old home place. The rest of the family were more or less scattered. It appears that during that period the land was not very productive, and outside of stock range it was not of much value. To provide for the care, comfort, and maintenance of their mother in her old age and the daughter Florence in her youth, the idea was conceived of entering into a contract with the defendant for that purpose, in consideration of which the remaining heirs would convey to him their interest in the lands. This led to the preparing of the agreement of September 24, 1883, which was actually signed by D. L., J. F., E. B., Florence I., and R. J. Watson, and S. H. Hazard, six of the heirs out of the ten. But it was never signed by the defendant, with whom it was purported to have been made. It specifically names the nine brothers and sisters and their wives and husbands as "heirs of the estate of James Watson, deceased, of the first part, and John L. Watson, of the second part," and further recites:

"That the parties of the first part hereby bargain, sell, and agree to convey unto John L. Watson, the party of the second part, all of that part of the lands owned by James Watson in Douglas County, Oregon, at the time of his death which are situated on the south side of the east fork of the North Umpqua River, upon the terms and conditions following: Said lands are subject to the dower of Emily A. Watson, widow of the said James Watson, and the sole interest which the parties of the first part have or own

therein is as heirs, either direct or indirect, of the said James Watson.''

This contract was dated September 24, 1883. The widow, Emily A. Watson, died in April, 1896. The daughter Florence married A. M. Crawford October 22, 1885. At the time the contract was signed the widow, the daughter Florence, and the defendant son were all living upon and in the actual possession of the lands; that is to say, there was no change of possession, and the defendant did not actually enter or take physical possession under the contract. From the wording of the contract it is apparent that it was then contemplated that it should be signed by all of the nine brothers and sisters, and that upon the performance of the terms and conditions therein stated the defendant should have a conveyance of all of their respective interests and become the sole owner of the property. Three of the heirs never did sign the contract, and it was never executed by the defendant as the party of the second part. In other words, upon the present theory of the defendant, he now claims and seeks the specific performance of a contract for a conveyance of an undivided six-tenths interest for the same identical consideration that he was to pay for a nine-tenths interest in the property. Under the contract, of which he now seeks specific performance, he would acquire a six-tenths interest only, whereas, if the contract had been signed by all the parties as originally intended, for the same consideration he would have acquired a nine-tenths interest. Under the contention which he now makes, defendant was entitled to a deed and specific performance upon the death of his mother. By the terms of the writing the provision for the care and support of Florence terminated with her marriage to A. M.

Crawford in October, 1885, and as to the mother it ceased with her death in 1896. By the defendant's own testimony, he never claimed that he had any right to a specific performance until at least six years after the death of his mother. After the marriage of Florence, the mother lived with the defendant for about one year, and the testimony is conclusive that during the last nine years of her life she lived with her daughter Florence.

1. Assuming that the contract had been duly executed and was in force, to entitle the defendant to a specific performance it was his duty to take care of and support his mother during all of her natural life. There is no claim or pretense that he in any manner supported or took care of her during the last nine years preceding her death, and there is testimony tending to show that at times she assisted him during that period. The claim of the defendant is not supported by the evidence. His own testimony is evasive, indefinite and uncertain. As we analyze the record, the signed contract was never legally delivered, and it was never the purpose or intent that it should be in force and effect until it was signed by all of the nine heirs, and three of them never did sign. Although it may have created a charge or lien upon the respective interests of the heirs in the property for the use and benefit of the mother and the daughter Florence for their care and support, the writing itself, as between the parties to it, was unilateral. The defendant did not promise, undertake or agree to do anything, and as to him it could not be enforced. If it meant anything, it was the duty of the defendant to care for and support his mother during her natural life, without any charge or claim against her or her estate. When she died he was ap-

pointed as administrator of her estate, and later filed a verified claim against it as follows:

"On or about 1876, to and including the year of on or about 1898, paid cash to Mrs. E. A. Watson, above deceased, for her support and the support of her family at divers times and in divers sums of money amounting in the aggregate to the sum of $800."

And for one thing and another he presented a claim against her estate amounting to $2,515.40. It is true that this whole claim was later compromised for about $300, but the fact remains that he did verify and file a claim of $800 against the estate of his mother for her care and support during the period covered by the alleged contract.

The testimony is clear and convincing as to how Florence Crawford acquired all of her interest. For the Hazard deed of one tenth she paid $400 in money. As stated, the mother lived with Florence the last nine years of her life.

"Q. Do you recall the making of a deed to you by your brother E. B. Watson and your brother J. F. Watson of their interest in your father's lands?

"A. I do.

"Q. Will you state how that deed came to be made?

"A. Yes. I was in Portland, and my brother E. B. Watson said he would make over his part of the estate to me for taking care of my mother, and I said at the time, 'Perhaps Johnny won't like it,' and he said, 'That don't matter.' He said, 'J. F.,' that is my brother Finley, 'and I have talked it over, and we will make it over to you, and not to Johnny; you have taken care of Mother, and it is not right.' And he spoke for my brother Finley, too. I did not speak to J. F. about it.

"Q. And that is the reason for making of the deed, was it?

"A. Yes, sir.

"Q. Did they say anything, at that time, that you remember, about this old contract?

"A. No, sir, I did not hear anything about that at all, as I remember now.

"Q. Mrs. Crawford, has that, since the death of your mother, or even before her death, ever been recognized by you in any way as being in existence, or being a binding contract?

"A. I always considered the property mine, and I am sure until late years my brother did too."

2, 3. It is true, as appellant contends, that "Specific performances may be granted at the suit of one who did not sign the contract, against the other party who did sign it." That was held by this court in *Flegel* v. *Dowling,* 54 Or. 40 (102 Pac. 178, 135 Am. St. Rep. 812, 19 Ann. Cas. 1159). But in the instant case the writing was never signed by all the parties in interest, and without such signing it was never intended to become valid and binding. It is true that the defendant later received deeds from two of his brothers for their respective interests, and that he now has the record title to a three-tenths interest. As to the conveyance from one of them, the defendant testifies that the consideration was the cancellation of a valid and existing debt due and owing him from his brother. As to the other, he testifies that the consideration was a mutual exchange of properties. Both transactions are strong evidence that the defendant did not then, and never did, intend to claim or rely upon a specific performance of the alleged contract. The record discloses that the defendant failed and neglected to keep and perform the material provisions of the alleged contract, and after a lapse of more than 20 years he is not entitled to its specific performance.

We approve the findings of the Circuit Court as to the ownership and their respective interests; that is to say, that the Lexington Investment Company is

the owner of an undivided one-tenth interest; Florence W. Crawford an undivided four-tenths interest; the eight Hamilton heirs an undivided one-tenth interest; the defendant John L. Watson an undivided three-tenths interest; the six children of D. L. Watson, an undivided one-tenth interest, subject to the dower right of Laura L. Watson. Strong testimony was offered upon the part of the plaintiffs tending to show that the land could not be fairly divided, and that a division would be prejudicial to the respective owners. The trial court so found, and for such reason decreed a sale and a division of the proceeds. Here, again, the testimony on the part of the defendant is not clear or convincing. There is no merit in the defense.

After a careful reading of the record, the decree is affirmed.                                                    AFFIRMED.

McBRIDE, C. J., and BROWN and BEAN, JJ., concur.